**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATALIE MEDINA, | )   NO. CV 12-10052 SS |
|                 Plaintiff, | ) |
|         v. | ) |
| CAROLYN W. COLVIN, | )   **MEMORANDUM DECISION AND ORDER** |
| Commissioner of the | ) |
| Social Security Administration, | ) |
|                Defendant. | ) |

**I.**

**INTRODUCTION**

Natalie Medina ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits.[1]  The parties consented, pursuant to

---

[1]  The Court notes that Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Carolyn W. Colvin for Michael J. Astrue as the defendant in this action.

28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  For the reasons stated below, the decision of the Agency is REVERSED and the action is REMANDED for further review consistent with this decision.

## II.

### PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on January 20, 2010.  (Administrative Record ("AR") 115-17).  Plaintiff alleged a disability onset date of November 7, 2006. (AR 115).  The Agency denied Plaintiff's applications, finding her to be "not disabled under [its] rules." (AR 78-82).  A hearing before Administrative Law Judge James D. Goodman (the "ALJ") was held on April 26, 2011.  (AR 45-76).  Plaintiff amended her disability onset date to March 21, 2007.  (AR 64-65).  The ALJ issued his decision on June 17, 2011 finding that Plaintiff was disabled and entitled to disability benefits from March 21, 2007 to October 6, 2009.  (AR 24-35).  However, the ALJ found Plaintiff was not disabled since October 7, 2009.  (AR 35-40).

The Appeals Council declined review on August 31, 2012.  (AR 1-6).  Plaintiff filed the instant action on November 30, 2012.

### III.

### FACTUAL BACKGROUND

Plaintiff is a former operations officer at a financial management corporation.  (AR 52-53).  She was fifty-three years old at the time of the hearing, forty-eight at the time of her first alleged disability onset date of November 7, 2006, and forty-nine at the time of the amended date of March 21, 2007.  (AR 34, 51-52).  Plaintiff has a high school education.  (AR 52).  Plaintiff alleges that she suffers from osteoarthritis of the right knee, status post anterior cruciate ligament and posterior cruciate ligament repair, severe superficial peroneal sensory neuropathy and severe medial plantar sensory neuropathy of the left lower extremity, osteopenia of the left ankle and foot, and morbid obesity.  (AR 32, 273, 390-94).  Plaintiff received surgeries on her right knee and left ankle on October 7, 2009.  (AR 242, 248).

**A.    Treating Doctors' Opinions**

Plaintiff began treatment, ranging from medication to injection therapy, with treating podiatrist Dr. Leslie Levy in May 2010.  (AR 330-62).  In January 2011, Plaintiff visited Dr. Levy for follow-up and treatment.  (AR 330).  Dr. Levy's evaluation included assessment that Plaintiff could lift less than ten pounds, stand and walk less than two hours, and sit less than two hours in an eight-hour workday.  (AR 324-29).  Dr. Levy observed that Plaintiff would need additional surgeries and treatment.  (AR 345-363).

3

**B.    Examining Physicians' Opinions**

The agreed upon medical evaluator in a separate worker's compensation case, Dr. Albert Simpkins, Jr., reviewed the medical record and examined Plaintiff in the doctor's capacity as an agreed medical evaluator.  (AR 241-59, 386-99).  Dr. Simpkins opined that Plaintiff retained the ability to lift not more than twenty pounds, could not walk or stand for more than six hours in an eight-hour workday, and was precluded from repetitive kneeling or squatting, as well as prolonged walking on uneven ground, weight bearing, stair climbing, kneeling, and squatting.  (AR 255, 396).  Dr. Simpkins stated that Plaintiff required repeat surgery for the right knee and the left ankle, including a possible total knee replacement in the future.  (AR 256, 397).

Dr. Bruce De Carlo completed a musculoskeletal functional assessment on April 22, 2010.  (AR 265-67).  Dr. De Carlo wrote that Plaintiff requires repeat surgery of the right knee and the left ankle, and that she also probably needs replacement of the right knee.  (AR 267).  He also wrote she would require injections and continued therapy and consultations.  (Id.).

**C.    State Agency Medical Consultant's Opinions**

Non-examining State Agency medical consultant Dr. Paulette Harar reviewed Plaintiff's record and provided an assessment in June 2010.  (AR 318).  Dr. Harar determined that Plaintiff retained the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently,

4

sit for at least six hours in an eight-hour workday, and stand and/or walk for about two hours in a workday, with occasional postural limitations.  (AR 315-18).

**D.   Third Party Report**

Plaintiff's friend Maria Nieves completed a Function Report as a third party.  (AR 168-75).  Ms. Nieves said Plaintiff cannot sit, stand, or walk for long periods of time, and that Plaintiff is unable to sleep because of pain.  (AR 169).  Ms. Nieves also reported that as a result of two operations Plaintiff received, Plaintiff is "unable to perform all of" the following: lifting, walking, stair climbing, squatting, sitting, bending, kneeling, standing, completing tasks, and reaching. (AR 173).

**E.   Plaintiff's Testimony**

Plaintiff testified that her knees were in worse pain after her operation than before.  (AR 62).  She testified that she does not need any special assistance in showering or bathing, and that she drives an automobile.  (AR 67).  Plaintiff daily gives herself a massage with a cream to her ankle, as well as some therapeutic exercises.  (AR 68-69). Plaintiff also testified that she can prepare her own meals and "tidy the area that [she] used" although she "can no longer really clean." (AR 69-70).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)); see also 20 C.F.R. § 416.910 ("Substantial gainful activity means work that - (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit."). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

6

(3)  Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing h[er] past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the

7

1    testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869
2    (9th Cir. 2000).

3
4                                    V.
5                           THE ALJ'S DECISION
6
7        On April 26, 2011, Plaintiff testified at a hearing held before ALJ
8    James D. Goodman.  (AR 45-76).  The ALJ and Kenneth Koszdin, Plaintiff's
9    attorney, questioned Plaintiff.  (Id.).  Plaintiff amended her
10   previously alleged disability onset date of November 7, 2006 to March
11   21, 2007.  (AR 63-65).

12
13       The ALJ employed the five-step sequential evaluation process and
14   concluded that Plaintiff was disabled from March 21, 2007 to October 6,
15   2009.  (AR 31-35).  At step one, the ALJ found that Plaintiff had not
16   engaged in substantial gainful activity since her alleged disability
17   onset date of March 21, 2007 because Plaintiff "testified that she did
18   not work during the relevant period and there is no affirmative evidence
19   to contradict her testimony."  (AR 31).  At step two, the ALJ found that
20   Plaintiff had the following conditions: advanced osteoarthritis of the
21   right knee; status post anterior cruciate ligament and posterior
22   cruciate ligament repair; severe superficial peroneal sensory neuropathy
23   and severe medial plantar sensory neuropathy of the left lower
24   extremity; osteopenia of the left ankle and foot; and morbid obesity.
25   (AR 32).  The ALJ dismissed Plaintiff's testimony regarding her shoulder
26   injury because Plaintiff also testified that her shoulder condition was
27   successfully treated.  (Id.).  The ALJ also dismissed Plaintiff's claims
28
                                     8

about being depressed and anxious, finding that there was an absence of any evidence in the record to support such impairments. (Id.). At step three, the ALJ determined that for the relevant time period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ found that from March 21, 2007 to October 6, 2009, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) "except that [Plaintiff] was unable to stand and/or walk, or sit for a full eight hours in an eight-hour day on a regular and sustained basis." (AR 33). In making this finding the ALJ gave Plaintiff a more restrictive RFC than what her own worker's compensation agreed medical evaluator, Dr. Simpkins, assigned her. (AR 33, 255, 314-18).

At step four, the ALJ found that from March 21, 2007 to October 6, 2009, Plaintiff was unable to perform her past relevant work as an operations officer, which is sedentary. (AR 33-34). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC. (AR 34). Plaintiff was forty-nine on the onset date of March 21, 2007, and was defined as "a younger individual age 45-49." (Id.). Plaintiff has had at least high school education and is able to communicate in English. (Id.). Plaintiff's acquired job skills do not transfer to other occupations within the RFC as the ALJ found. (Id.). Therefore, the ALJ found there were no jobs that existed in significant numbers in

the national or local economy that Plaintiff could have performed.   (AR 34-35).

The ALJ then found that medical improvement occurred as of October 7, 2009, due to surgery, and that beginning on that date Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (AR 35-36).   The ALJ found that beginning on October 7, 2009 Plaintiff has had the RFC to perform sedentary work in that she can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk two hours and sit six hours in an eight-hour work day with normal breaks; occasionally push and/or pull with her left lower extremity; occasionally climb ramp, stairs, ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl. (AR 36).   The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible beginning on October 7, 2009.   (Id.).

In making this determination the ALJ gave substantial weight to the opinion of the state agency medical consultant, Dr. Paulette Harar.   (AR 38).   In addition, the ALJ gave some weight to the opinion of Dr. Simpkins, the worker's compensation agreed medical evaluator for Plaintiff.   (Id.).   The ALJ noted Dr. Simpkins also had a longitudinal perspective of Plaintiff's impairments and that Dr. Simpkins's opinion is mostly consistent with that of Dr. Harar.   (Id.).   Dr. Simpkins found

10

that Plaintiff reached "Maximal Medical Improvement" after the surgery and determined that Plaintiff could not lift more than twenty pounds, could not walk or stand for more than six hours in an eight-hour workday, and was precluded from prolonged walking on uneven ground, weight bearing, and stair climbing, as well as repetitive or prolonged squatting and kneeling.  (AR 37-38).

The ALJ gave less weight to treating physician Dr. Leslie Levy, who noted Plaintiff could not lift more than ten pounds, could stand and/or walk less than two hours and sit less than two hours in an eight-hour workday, could occasionally twist and climb stairs, but could never stoop, crouch, climb ladders, reach, finger, or feel.  (AR 38)

The ALJ gave no weight to the musculoskeletal functional assessment, from the office of Dr. Bruce De Carlo, noting that the physician did not sign the assessment.  (AR 39, 265-67).  The ALJ also noted that the assessment "lacks a complete functional assessment of [Plaintiff], as it primarily notes signs and symptoms."  (AR 39).  In regard to Plaintiff's obesity, the ALJ noted that "nothing in the record demonstrates that this impairment creates any functional limitations." (AR 38).  However, the ALJ found nevertheless that Plaintiff's obesity "exacerbated her other physical conditions" and therefore considered it in making the final RFC determination.  (Id.).

The ALJ also considered the Third-Party Adult Function Report that Plaintiff's friend, Maria Nieves, completed.  (AR 39, 168-75).  The ALJ noted that Ms. Nieves's statements were "not sworn" and that this is "a

11

reasonable basis to question the validity of the report." (AR 39). The ALJ further noted that Ms. Nieves appears to lack personal knowledge of at least some of the claims presented because Ms. Nieves includes in the report allegations regarding Plaintiff's sleep patterns, when Ms. Nieves does not live with Plaintiff and has no intimate relationship with Plaintiff. (Id.). The ALJ found this to suggest that Ms. Nieves was "simply repeating" Plaintiff's allegations without independent verification, which cast doubt on the reliability of the report as a whole. (Id.).

The ALJ then found that the medical improvement that has occurred is related to the ability to work, and that since October 7, 2009, Plaintiff has been capable of performing past relevant work as an operations officer because the work does not require the performance of work-related activities precluded by Plaintiff's current RFC. (Id.). The ALJ therefore concluded that Plaintiff's disability ended on October 7, 2009. (AR 40).

## VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is

12

more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u>  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).

The ALJ's decision denying benefits will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)(citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)).  In reviewing the Commissioner's decision, the court may not substitute its judgment for that of the Commissioner.  <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  <u>See</u> <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007).

**VII.**

**DISCUSSION**

Plaintiff argues that the ALJ committed error for two reasons.  First, Plaintiff alleges that "the ALJ's residual functional capacity findings lack[] the support of substantial evidence."  (Mem. in Supp. of Pl.'s Comp. at 3).  Second, Plaintiff alleges that "the ALJ fails to articulate legally sufficient reasons for discrediting [Plaintiff]."

13

1  (<u>Id.</u> at 9).   For the reasons discussed below, the ALJ's decision is
2  REVERSED.

3

4  **A.   <u>The ALJ Failed To Provide Specific And Legitimate Reasons For</u>**
5       **<u>Rejecting The Treating Doctor's Opinion</u>**

6

7       Plaintiff contends that the ALJ's RFC findings are improper because
8  the ALJ gave little weight to the January 2011 opinions by Dr. Levy,
9  Plaintiff's treating physician.   (Mem. In Supp. Of Pl.'s Comp. at 3-9).

10

11      Although the opinion of a treating physician is entitled to great
12  deference, it is "not necessarily conclusive as to either the physical
13  condition or the ultimate issue of disability." <u>Morgan v. Comm'r of</u>
14  <u>Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).   When another
15  doctor contradicts a treating doctor's opinion, "the Commissioner may
16  not reject [the treating doctor's] opinion without providing 'specific
17  and legitimate reasons' supported by substantial evidence in the record
18  for doing so." <u>Benton ex rel. Benton v. Barnhart</u>, 331 F.3d 1030, 1036
19  (9th Cir. 2003) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.
20  1995)).   An ALJ may give less weight to a treating physician's opinions
21  when the treating physician's opinions conflict with those of a non-
22  examining physician and the non-examining physician's opinions are
23  consistent with the record. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55
24  (9th Cir. 1989).

25

26

27

28

In rejecting Dr. Levy's opinion, the ALJ stated the following:

I give less weight to the opinion of Dr. Levy, who noted that the claimant could not lift more than ten pounds, could stand and/or walk less than two hours and sit less than two hours in an eight hour work day, could occasionally twist and climb stairs but could never stoop, crouch, climb ladders, etc. <u>The possibility always exists that a doctor may express an</u> <u>opinion in an effort to assist a patient with whom he or she</u> <u>sympathizes for one reason or another.  Another reality,</u> <u>which should be mentioned, is that patients can be quite</u> <u>insistent and demanding in seeking supportive notes or</u> <u>reports from their physicians, who might provide such a note</u> <u>in order to satisfy their patient's requests and avoid</u> <u>unnecessary doctor/patient tension</u>.

(AR 38) (emphasis added).

The stated reasons – speculation about the doctor's improper motives and Plaintiff's "insistence" - have absolutely no support whatsoever in the record.  If these are legitimate reasons to reject a treating doctor's opinion, without any corroborating evidence, then these reasons could be proffered in every case involving the rejection of a treating doctor's opinion.  These reasons are neither specific or legitimate.

15

1    The ALJ attempts to bolster these reasons by stating that such
2    motives are more likely present in a case in which the treating doctor's
3    opinion "substantially departs" from the rest of the record.   (AR 38).
4    In a conclusory fashion, the ALJ states that Dr. Levy's opinion departs
5    from the record evidence, but the ALJ's opinion omits any specific
6    examples or citations to demonstrate how Dr. Levy's opinion lacks
7    support in the record.   Dr. Levy's reports and records regarding
8    treatment are perhaps the most specific and detailed items of evidence
9    in the record, reflecting an ongoing and close treatment relationship
10   involving considerable objective evidence to support Dr. Levy's
11   conclusions.   As such, the ALJ was required to provide specific and
12   legitimate reasons, i.e., reasons supported by the record, in order to
13   reject Dr. Levy's opinion.   Accordingly, remand is required.

14

15   **B.   The ALJ Failed To Provide Clear And Convincing**
16        **Reasons To Reject Plaintiff's Testimony**

17

18   Plaintiff argues that the ALJ failed to articulate legally
19   sufficient reasons for discrediting Plaintiff's testimony.   (Mem. in
20   Supp. of Pl.'s Comp. at 9).   The Court agrees.

21

22   In assessing the credibility of a claimant's testimony regarding
23   subjective pain or the intensity of symptoms, the ALJ engages in a two-
24   step analysis.   Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2008)
25   (amended).   First, the ALJ must determine whether there is "'objective
26   medical evidence of an underlying impairment which could reasonably be
27   expected to produce the pain or other symptoms alleged.'"   Id. (quoting

28

16

1  Lingelfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the
2  claimant has presented such evidence, and there is no evidence of
3  malingering, then the ALJ must give "'specific, clear and convincing
4  reasons'" in order to reject the claimant's testimony about the severity
5  of the symptoms.  Id.  (quoting Lingenfelter, 504 F.3d at 1036).  At the
6  same time, the ALJ is not "required to believe every allegation of
7  disabling pain, or else disability benefits would be available for the
8  asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  Fair
9  v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).
10
11      In evaluating a claimant's testimony, the ALJ may use "'ordinary
12  techniques of credibility evaluation[.]'"  Turner v. Comm'r of Soc.
13  Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting Smolen, 80 F.3d
14  at 1284).  For instance, the ALJ may discredit a claimant's testimony
15  when the claimant reports participation in everyday activities
16  indicating capacities that are transferable to a work setting.  See
17  Morgan, 169 F.3d at 600.  A claimant's conflicting testimony may also
18  serve as clear and convincing grounds to reject such testimony.  Thomas,
19  278 F.3d at 958-59.
20
21      Here, there was considerable medical evidence of underlying
22  impairments that supports Plaintiff's testimony.  Although the ALJ
23  observed that Plaintiff's allegedly disabling pain improved with
24  treatment, he neglected to address the fact that during the time the ALJ
25  found medical improvement, Plaintiff's medical records showed ongoing
26  severe pain, treated with injections and strong pain medication, as well
27  as contemplation of further surgeries.  (AR 37, 333-345 ).  Dr. Levy's
28

17

detailed records support Plaintiff's allegation that her condition remained the same or worsened after surgery in October 2009.  (Id.).

Plaintiff's testimony regarding her daily activities demonstrated an extremely limited lifestyle that is not inconsistent with her testimony.  Plaintiff had a lengthy work history (employment as an Operations Consultant from June 1976 to June 2006) (AR 147) which adds credibility to her claim that her ability to perform work-related activities has diminished since her disability onset date.  Plaintiff's daily activities testimony does not undermine her claim that, because of her impairments, she is no longer capable of doing her past work. Remand is required.

# VIII.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[2] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Memorandum and Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 27, 2013.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[2] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

19